Gary F. Lowry & Marian Carol (husband & wife)
2900 S. Blue Ranch Road
Cottonwood, Yavapai County, AZ  86326
602-540-5808
Representing Self "Pro Se", Without a Lawyer

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GARY LOWRY & MARIAN CAROL (husband and wife) | ) ) ) |
| Plaintiffs/Appellants | ) ) |
| VS | ) **Case No. 13-15598** ) ) |
| EMC MORTGAGE CORPORATION A Delaware Corporation; | ) ) ) |
| and | ) ) |
| JPMORGAN CHASE & COMPANY A Delaware Corporation | ) ) ) |
| and | ) ) |
| JPMORGAN CHASE BANK, N.A. A Delaware Corporation | ) ) ) |
| Defendants/Appellees | ) ) |

# APPELLANTS' INFORMAL REPLY BRIEF

## STATEMENT OF THE ISSUES

Did the district court error and abuse its discretion in dismissing Plaintiffs' case?

## ARGUMENT

**1. Western Spirit was a party to the loans.**

Appellees begin their Answering Brief by stating, "At no time was Plaintiffs' non-profit corporation,

Western Spirit Enrichment Center, Inc., a party to the loan".  This is factually incorrect, as evidenced

by the documents Appellants Lowry/Carol submitted to this Court in their Opening Brief.  The Uniform

1

Residential Loan Application, an integral part of the loan document package for Lowry/Carol's initial loan, shows that the lender used the $8,000 monthly income of Western Spirit to secure the loan (Appellants' personal monthly income at that time was approximately $1,200 in social security). The same document also shows Western Spirit as Appellants' employer. For the subsequent loan modification of 2006, again Western Spirit's income ($78,059 annually) was used to secure the loan, as evidenced by Western Spirit's bank account number being written at the top of the Bank Statement Analysis form of Encore Credit Corporation, the lender before Chase took over the loan. These documents prove without a doubt that Plaintiffs' Western Spirit ministry was indeed a party to both the initial loan and later modification. EMC accepted and confirmed these documents and Western Spirit's income as the loan qualifier for both loans and had a legal, moral and ethical obligation to continue to use Western Spirit's income for Lowry/Carol's loan modification application.

**2. Chase violated the provisions of the HAMP SPA.**

The Service Participation Agreement (SPA) of HAMP, under Treasury Supplemental Directive 09-01, requires participating servicers "to consider all eligible mortgage loans" and "to use reasonable efforts to remove any prohibitions. . .in order to carry out any modification under the HAMP." The Directive further states: "The servicer must consider the borrower's financial condition, . . .combined monthly income from wages and **all other identified sources of income**." "The borrower's monthly gross income includes wages and salaries, . . .**other compensation for personal services**, . . .**and other income**." "Servicers should include **non-borrower household income** (bold added) in monthly gross income if it is voluntarily provided by the borrower and if there is documentary evidence." Appellants did voluntarily provide Chase with Western Spirit's bank statements showing their income as part of their loan modification application. This income certainly qualified as "all other identified sources of income", "other compensation for personal services", and "non-borrower household income". Appellees were aware that Western Spirit had always paid the mortgage on Lowry/Carol's property and had a stellar history of never missing a payment. Chase is therefore guilty of fraud and breach of contract by intentionally and willfully violating the provisions of the SPA Directive, for it was legally

2

bound by the provisions to include Appellants' Western Spirit income in their consideration of a loan modification for Lowry/Carol and to "use all reasonable efforts to remove any prohibitions" to provide a loan modification for Appellants, and for their deliberately false statements to Appellants.  If Appellees had included Western Spirit's income, as the previous lenders had done, to run their Net Present Value (NPV) test, it would have produced a positive result and shown that Lowry/Carol (and Western Spirit) had sufficient income to qualify for the loan modification.  Directive 09-01 also states "If a borrower does not qualify for the HAMP program, the servicer. . .must consider alternatives . . . and consider the borrower for another foreclosure prevention alternative."  Chase failed Appellants in this regard also, by never offering Lowry/Carol any alternatives.

**3. Chase failed to reevaluate Appellants' NPV test.**

Lowry/Carol received a letter from Chase on April 17, 2011(60 days after being informed that their application had been denied and 30 days past due, according to HAMP guidelines) stating that Chase would reconsider their decision and reevaluate the NPV formula if Lowry/Carol would appeal within thirty (30) days.  The letter went on to say, "If you provide us with evidence that any of these input values are inaccurate, and those inaccuracies are material, . . .we will conduct a new NPV evaluation. We want to ensure that the NPV evaluation is based on accurate information."  Appellants sent a certified letter to Chase requesting such a review on April 28, 2011.  Their letter pointed out the many inaccuracies in the NPV results and specifically said, "the NPV income field is in error because EMC has incorrectly used Appellants' personal income instead of Western Spirit's income.  In Input Data Field #3, "Monthly Gross Income", you show our income as $1,781.95.  We have no idea how you arrived at this incorrect figure, for we do not have such a monthly income.  Another error with your NPV inputs is Input Data Field #23, "Months Past Due", which says that we are one (1) month past due.  This is incorrect!  We are not, nor have we ever been, one month past due.  An additional error is also Field #34, "Borrower's Total Monthly Obligations", which states the amount to be $3,752.30.  This figure is also incorrect and has no basis in reality."  EMC's calculations of the NPV test results of Appellants' financial condition were incorrect, misinformed, unverified, and incompetently and fraudulently performed.  Lowry/Carol never received a response from Chase concerning these errors in their NPV results and no further

updating of their application or computation of the NPV test was ever performed, despite Chase's written promises to the contrary. Appellants even sent certified letters to senior executives at Chase, including CEO James Dimon, pointing out the NPV errors and asking for a reevaluation, all to no avail. TSD 09-01 states that "the servicer MUST maintain detailed documentation of the NPV model used, all NPV inputs and assumptions and the NPV results." Chase never responded to Lowry/Carol's request for an NPV review and reevaluation in any way or provided them with any NVP documentation, input values, or assumptions, in violation of the HAMP SPA Directive, in spite of Chase's letter of April 16 promising to do so. Appellees falsely represented that it would reevaluate Lowry/Carol's modification application and NPV test results if they so requested within thirty days. This misrepresentation and contract breach by Chase, which Appellants relied on, caused Lowry/Carol to forego taking other possible and available actions to save their home, including selling their house, refinancing their loan, seeking bankruptcy protection, etc., and resulted in serious damage to their credit, and, most significantly and sadly, the closing of their spiritual ministry retreat center, Western Spirit Enrichment Center, and the loss of that income source. Meanwhile, Chase employees were continuing to tell Lowry/Carol to continue making their mortgage payments if they wanted a permanent loan modification (as detailed in Appellants' Complaint). Appellants were entitled by Directive 09-01 to challenge Chase's decision to deny them a loan modification by providing different (and correct) financial information to support a different NPV calculation. Appellees were in violation of the law and breach of contract of SPA Directive 09-01.

**4. JPMorgan Chase & Company and Chase Bank, N.A. are liable.**

Appellees claim there should be no liability by JPMorgan Chase & Company (JPMC) or even JPMorgan Chase Bank, N.A. (the Bank). Lowry/Carol disagree, for JPMorgan Bank, N.A. is the self-acknowledged successor to EMC Mortgage Corp. The Bank on or about April 1, 2011, acquired all or substantially all of EMC's assets in a *de facto* merger and succeeded to EMC's business, and servicing rights were transferred from EMC to the Bank. The inter-company asset sale of EMC's loan servicing business did not result in a transfer of ownership of EMC's assets, which remained

4

with EMC's and JPMorgan Chase Bank, N.A.'s parent holding company, JPMorgan Chase & Company.  A notice sent to Lowry/Carol at that time said "JPMorgan Chase Bank, N.A. will use the brand name of EMC Mortgage when servicing your loan."  Therefore, on information and belief, the Bank directed, controlled, formulated, and/or participated in EMC's loan servicing activities in the State of Arizona, and, it is clear, has assumed liabilities therefore, and will continue to direct, control, formulate, and/or participate in these servicing activities in the future.  The Bank succeeded to EMC's business and assumed all of EMC's rights and duties as servicer relating to all transactions to which EMC is a party and, therefore, is jointly and severally liable for EMC's unlawful conduct and activity.  The Bank and EMC are affiliated entities that share common ownership by JPMC.  Courts have previously held that if "in substance, it was the intent of the successor to absorb and continue the operation of the predecessor", then the substantial continuity of operation includes liability for the predecessor's acts.  This is not a case of EMC going out of business, but rather the Bank assuming EMC's business, assets, and servicing rights and loan contracts of existing mortgage holders, as EMC continues as an LLC.  Therefore, the Bank cannot use their acquisition of EMC as an escape of its liability.  On the other hand, if JPMC transferred all of EMC's assets and servicing rights to the Bank to empty EMC of its assets and leave a mere shell that cannot satisfy any judgments against it, this would constitute fraud against Appellants and subject its subsidiary, the Bank, to the liability as EMC's successor.

   JPMorgan Chase & Co. (JPMC), as the parent company of both EMC and the Bank, directs, controls, formulates, and/or participates in the servicing activities of EMC and the Bank.  JPMC is jointly and severally liable for EMC's and the Bank's unlawful activity, as detailed in the Complaint.  JPMC cannot escape liability for EMC or the Bank, for when the notion of a separate entity is used to defeat public convenience, justify a wrong, protect a fraud or defend a crime, or in general used as a device to defeat the law, the veil of corporate "legal fiction or personality" is pierced.  This occurs when a parent company's involvement with its subsidiaries, in this case EMC and the Bank, is inconsistent with its status as a mere investor, as when the parent company involves itself in the management of the subsidiary and dominates and controls it.  A parent company can be directly liable for its subsidiary's actions when the parent interferes with the subsidiary's operations to the extent that the

5

"alleged wrong" can seemingly be traced to the parent company through the conduit of its own personnel or management. If that control has resulted in a fraud or wrong and has caused the plaintiffs' injury or unjust loss, the corporate veil can be pierced. Factors used to establish that the subsidiary is not in reality a separate entity include whether there are common directors and/or officers; the parent finances the subsidiary; and the parent caused the organization of the subsidiary.

It is a fact that Chase Bank was organized by JPMC as a national banking association and is wholly owned by JPMC. They share the same corporate headquarters in New York. James Dimon is the Chairman and Chief Executive Officer of both organizations. In fact, Appellants received a letter from the Bank dated November 15, 2011 identifying "Jamie Dimon, (as) Chairman and Chief Executive Officer of JPMorgan Chase Bank, N.A." According to a prospectus filed by JPMC with the SEC on October 26, 2009, the Executive Officers and Directors of both entities are the same. JPMC, as the parent company of the other two Appellees, therefore must assume the responsibility and liability of the massive mortgage fraud committed by them against Lowry/Carol. It is certain that JPMC, with shared management, had the knowledge, means, and intention to set the policy for its wholly owned subsidiaries to commit the fraudulent actions alleged in Appellants' Complaint. To ignore the involvement of JPMC in its subsidiaries' actions is to believe that JPMC was not affiliated with, knowledgeable of, benefited from, or was well-versed of the immensely profitable mortgage business EMC and the Bank were producing for JPMC for many years. To deny the actions of JPMC is to ignore their own personal admissions of fault and the findings of the OCC and Federal Reserve. Appellee JPMC includes all successors and assigns to the extent that they are responsible for the conduct alleged herein. The Court's role at the 12(b)(6) stage is not to evaluate the strength or weakness of Appellants' claims or whom is liable, but to take as truth the allegations and legal arguments made against Appellees.

**5. Appellants can sue over failed loan modification.**

Although Lowry/Carol were never formally offered a trial period plan (TTP), the same facts, conditions, and principals apply to their case as in this Court's recent *Corvello v. Wells Fargo Bank, N.A.* decision – violations of HAMP terms and provisions, promises (both oral and

6

written) made and broken, and contracts established and breached. The Court, in their review, noted that Corvello and Lucias both complied with all the requirements of HAMP, submitted all the documents requested by Wells Fargo, and made all their necessary payments. Lowry/Carol also complied with all the requirements of HAMP, submitted all the documents requested by Chase, and continued to make all their necessary payments. Also, as detailed above, if Chase had complied with all the provisions of SPA Directive 09-01, as required by law, the Appellants' NPV test would have been positive and their income sufficient. Therefore, the Appellees were contractually obligated under the terms of HAMP to offer Lowry/Carol a permanent loan modification. Chase's unethical actions in soliciting Lowry/Carol for a loan modification, requesting (and re-requesting) reams of documents, avoiding or not returning telephone calls, using "phantom" employees and phone numbers, promising a loan modification, verbally and in writing, if they continued to make their monthly payments, accepting their continued (higher) payments, violating HAMP's terms by refusing to use Appellants' Western Spirit income, inaccurately and incompetently calculating a negative NPV result, and refusing to offer Appellants a loan modification or other alternatives, all constitute fraud and breach of contract (as detailed in the Complaint). Chase has engaged "in a flim-flam or, in plain words, to work a fraud", as Circuit Judge Noonan so well put it.

*Wigod v. Wells Fargo Bank, N.A.,* from the Seventh Circuit Court of Appeals, addresses the same issues as *Corvello*. "When one party to a contract has discretion to set open terms in a contract, that party must do so 'reasonably and not arbitrarily or in a manner inconsistent with the reasonable expectations of the parties." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F. 3d 576, 395 (7th Cir. 2003)*. Chase was lawfully obligated by the HAMP terms to use the Appellants' Western Spirit income and to calculate an accurate and truthful NPV test in determining Lowry/Carol's modification application. This would seem to be a reasonable manner consistent with the reasonable expectations of Lowry/Carol. Chase, of course, did not offer Lowry/Carol *any* permanent modification, let alone one that was reasonable and consistent

7

with HAMP program guidelines. It seems Chase implemented its HAMP compliance procedures in a way designed to thwart Lowry/Carol's legitimate expectations. Chase was certainly required to offer *some* sort of good-faith loan modification to Lowry/Carol consistent with HAMP guidelines. Therefore, Appellees breached their HAMP contract, as well as their loan contract, with Lowry/Carol. "When Chase Bank received public tax dollars under the TARP program, it agreed to offer . . .loan modifications under HAMP according to guidelines, procedures, instructions, and directives issued by the Department of the Treasury." *Wigod, supra, 673 F. 3d at p. 556, see also West v. JPMorgan Chase Bank, N.A.*. Therefore, Chase Bank had an express and implied obligation under HAMP to offer Lowry/Carol a modification. The Court must assume at the pleadings stage that Appellants met each of HAMP's conditions, and it is undisputed that Chase offered no modification plan at all. The terms of the HAMP program are clear and definite enough to support Lowry/Carol's breach of contract theory. *Belyea v. Litton Loan Servicing, LLP, No. 10-10931-DJC, 2011 WL 2884964, at *8 (D. Mass. July 15, 2011).*

*Young v. Wells Fargo Bank, N.A.,* from the First Circuit Court of Appeals, applies to Appellants' case, as well: "Defendants' handling of her loan modification process under the TPP was only the culmination of a prolonged period of unfair conduct." "The consequences of this conduct plausibly placed Young 'in a worse and (more) untenable position than (she) would have been' had defendants dealt with her appropriately during this time period." *Hershenow, 840 N.E. 2d at 534*. Like Young, the Appellants have incurred significant economic damages that adversely affect them now and will continue to affect them in the future. Lowry/Carol have lost all equity in their home, have ceased operations of their Western Spirit retreat center and lost the income from it, their credit rating has been significantly damaged, they have incurred legal costs in their lawsuit, and have suffered emotional distress beyond measure.

**6. Consumer fraud.**

Appellants have pled their fraud allegations in their Complaint with particularity and specificity as to time, place, content, and identification of parties. Chase's employees repeatedly and with certainty promised Lowry/Carol that their loan modification would be approved so long

8

as they continued to make their monthly mortgage payments. These statements were made knowing to be false, for Appellees' employees had a proven history of misleading, delaying and deceiving borrowers during the modification application process (see Exhibits 3, 4, 5 & 6 of Complaint – employee testimonies). Chase knew from the start that they would not be considering Appellants' Western Spirit income, yet continued throughout the application period to falsely assure Lowry/Carol that their loan modification would be approved. Even when Chase offered to review their denial decision and reevaluate the NPV test results, they misled Appellants into relying on that reevaluation and thinking their application would finally be approved. Meanwhile, Chase did nothing! Appellants were assigned to Mr. Samuel Young as their "Home Lending Executive Office" contact person at the beginning of the modification process. Mr. Young assured Lowry/Carol at least five times that their application would be approved. It is understandable that Lowry/Carol would reasonable rely on Mr. Young's assurances, for he was their personal contact in the "Executive Office". "Justifiable reliance exists when it was 'reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." *In-Quote Corp. v. Cole, No. 99-cv-6232, 2000 WL 1222211, at *3 (N.D. Ill. Aug. 24, 2000) and Teamsters Local 282 Pension Trust Fund v. Angelos, 839 F. 2d 366, 371 (7th Cir. 1988).* Yet, it is now obvious that Mr. Young had no specific knowledge of their modification application and intentionally made these false promises to Lowry/Carol to deceive, mislead and delay them so they continued to make their payments. Appellants contend that there was at least an oral agreement to modify their mortgage and they fully performed their obligations under this agreement. *Secrest v. Sec. Nat'l. Mortg. Loan Trust, 2002-2, 84 Cal. Rptr. 3d 275, 284-85 (Ct. App. 2008).* Appellants have satisfied the heightened standards of Rule 9 (b), "a plaintiff alleging fraud . . .must state with particularity the circumstances constituting fraud." *Borsellino v. Goldman SachsGroup, Inc., 477 F. 3d 502, 507 (7th Cir. 2007).* Fraudulent intent may also be alleged generally, according to Fed.R.Civ. P. 9(b). It seems Chase deliberately implemented a system designed to wrongfully deprive its eligible

9

HAMP borrowers of an opportunity to modify their mortgages.  Appellants, in their Complaint, have detailed specific, objective manifestations of this scheme.  Thousands of HAMP-eligible homeowners have become victims of Chase's intentional and systematic failure to offer permanent loan modifications (witness the many lawsuits that have been filed) after falsely telling them it would.  Courts have found that a single false promise made to the public at large satisfies the scheme exception and as few as two broken promises enough to establish a scheme to defraud.  Chase made and broke promises of loan modifications to Appellants and to thousands of other potential eligible borrowers.  This widespread pattern of deception is a scheme actionable as fraud.  "The pleading should be sufficient to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud."  *Committee on Children's Television, Inc. v. General Foods Corp., (1983) 35 Cal. 3d 197, 216 (197 Cal. Rptr. 783, 673 P. 2d 660 and id at pp.216-217.*    In Lowry/Carol's case, it is obvious from the aforementioned details that Appellees dishonestly and ineffectually implemented HAMP, and this conduct constitutes unethical, immoral, unscrupulous, and fraudulent business practices.

7. **Unfair business practices.**

A.R.S. 44-1522 of the AZ Consumer Fraud Act provides: "The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice."  The elements of a claim here are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co., 612 F. 3d 932, 934 (7th Cir. 2010) citing Robinson, 266 Ill. Dec. 879, 775 N.E. 2d at 960.* Chase's misrepresentations and concealment of material facts constitute deceptive business practices. Appellees' acts of dishonestly and ineffectually implementing the provisions of HAMP and intentionally

10

deceiving Lowry/Carol, causing serious economic and emotional harm to them, also qualify as deceptive business practices. Under the Consumer Fraud Act, pleading intent is not necessary; Appellants' allegations in their Complaint that Chase committed a deceptive or unfair act and intended that Lowry/Carol rely on that act are sufficient for their claim to proceed. Appellants have pled pecuniary injury caused by Chase's deceptions. "Allegations of damage to (homeowners) credit and the inability to fairly negotiate a plan to stay in the home" are sufficiently pled damages. *In re Bank of America Home Affordalbe Modification (HAMP) Contract Litigation*, No. 10-md-02193-RWZ, 2011 WL 2637222, at *5-6 (D. Mass. July 6, 2011). Lowry/Carol's allegations that Chase did not legally comply with the terms and provisions of HAMP and the Treasury Directives, and made misrepresentations and inaccurate calculations of Appellant's NPV results, and failed to re-evaluate their NPV as promised by Chase, qualify as unfair business practices under the law.

**8. Breach of contract and covenant of good faith and fair dealing.**

Appellees state in their Answering Brief that "Plaintiffs did not and cannot point to any term of any contract that was breached or any benefit they were denied." However, paragraph 2 of this Reply Brief describes in detail again the provisions of the Service Participation Agreement of HAMP, Treasury Supplemental Directive 09-01, that were violated, a clear breach of contract, as well as violations of the rules governing the calculation and reevaluation of the NPV test results. Also, in the opinion of the Appellants, Chase breached their original loan agreement by not using Lowry/Carol's Western Spirit income, instead of their own personal income, as previously, (as detailed in their Complaint) and by artificially and illegally manipulating the Libor bank rate that governed Lowry/Carol's interest rate. The benefit denied, of course, was the loss of a permanent loan modification, which Appellants qualified for and were legally entitled to, as well as their interest rate being illegally increased twice during the term of their loan. "When the promise is conditioned on the performance of some act by the promisee or a third party, there can be a valid offer." *See 1 Richasrd A. Lord, Williston on Contracts*, 4:27 (4th ed. 2011). The SPA requires participating servicers "to consider <u>all</u> eligible mortgage loans" and "to use reasonable efforts to remove any prohibitions. . .in order to carry out any modification under the HAMP." Lowry/Carol reasonably believed and expected that Chase would use their Western

11

Spirit income, as the lenders had done twice previously, and as HAMP required them to do in using "all other income, including non-borrower household income" (per SPA Directive 09-01) to determine their eligibility for a loan modification.  Chase breached their contracts and the implied covenant of good faith and fair dealing when they failed to do so.  Appellants received a letter from Chase on October 24, 2011 promising, "If you satisfy the eligibility criteria, including submitting all of the required documentation, we will offer you a (loan modification) Trial Period Plan."  There is no doubt, and Appellees do not dispute, that Lowry/Carol did submit all of the required documentation and met all of the other conditions of Chase's offer.  Chase knew of Western Spirit's excellent payment history in making all the mortgage payments since the loan's inception, and knew of their legal obligations under HAMP and the SPA.  They also knew from submitted bank records, that Western Spirit had sufficient income to produce a positive NPV result.  Yet, they intentionally and deceitfully, in contrary regard to their HAMP requirements, used Lowry/Carol's low personal income to produce a negative NPV result and deny them a loan modification.  "HAMP provided an 'existing standard' by which the ultimate terms of a permanent modification were to be set." *Wigod, 673 F. 3d at 565*.  If there are any ambiguities in question, "We are not obligated to accept the allegations of the complaint as to how to construe (a contract), but at this procedural stage, we should resolve any contractual ambiguities in favor of the plaintiff." *Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F. 3d 119, 122 (2nd Cir. 2005)*.  Chase in writing, and numerous employees verbally, promised Lowry/Carol that if they complied with certain conditions, submitted all information Chase requested to assess their eligibility, and represented their financial situation truthfully, a loan modification would be granted.  The covenant of good faith and fair dealing requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract."  *T.W. Nickerson, Inc. v. Fleet Nat'l. Bank, 924 N.E. 2d 696, 703-4 (Mass. 2010)*.  Chase's breach of duty was intended to be self- serving, to gain an unfair advantage, and injury Lowry/Carol by denying them the fruits (the loan modification) of the contract.  "The intent of

12

the parties is a question of fact to be determined at trail." *Seaco Ins. Co. v. Barbosa, 761 N.E. 2d 946, 951 (Mass. 2002).* Appellants believe they have stated a cause of action for breach of contract and covenant of good faith and fair dealing and the allegations in their Complaint are enough to put Appellees on notice of the breaches at issue here.

**9. Unfair debt collection practices.**

Chase was acting as a debt collector engaging in debt collection practices as defined in Section 803(6) of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692a(6). In fact, in multiple letters received by Lowry/Carol, Appellees EMC and the Bank each clearly admits, states, and identifies itself by saying "We are a debt collector". Mortgage lenders are not specifically exempt from these provisions, especially if they are not the original creditor (which was Encore Credit Corp., not EMC/Chase). In connection with the servicing and collection of mortgage loans, Appellees furnish information to consumer reporting agencies. As such, Appellees are subject to Section 623 of the FCRA, 15 U.S.C. 1681s-2, which imposes a series of duties and prohibitions upon any person or entity that furnishes information to a consumer reporting agency. They are also held to a strict standard of fairness with debtors. Appellees are "creditors", as that term is defined in Section 103(f) of the TILA, 15 U.S.C. 1602(f), and Section 226.2(a)(17) of Regulation Z, 12 C.F.R. 226.2(a)(17), and therefore are required to comply with applicable provisions of the TILA and Regulation Z. *See in re Bank of Am. HAMP Contract Litig. No. 10-MD-02193-RWZ, 2011 WL 2637222, at *6 (D. Mass. July 6, 2011); cf. Reyes v. Wells Fargo Bank, N.A., No. C-10-01667JCS, 2011 WL 30759, at *20 (N.D. Cal. Jan. 3, 2011).* "A practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury." *Rule v. Fort Dodge Animal Health, Inc., 607 F. 3d 250, 253 (1st Cir. 2010) see also NASCO, Inc. v. Public Storage, Inc., 127 F. 3d 148, 152 (1st Cir. 1997).* Lowry/Carol received numerous telephone calls over many weeks from Chase representatives stating they were calling about past due payments, when, in realty, they were never late on any of their payments, and numerous letters saying they were behind on their loan payments and Chase was attempting to collect a debt. Lowry/Carol was also informed on several occasions that their loan was in the "imminent default" department and "that your loan may be referred to foreclosure, or any pending foreclosure action may continue. If you want to keep your

property: You will need to bring your account current." Chase provided inaccurate and false information to the three credit reporting agencies, saying Lowry/Carol was delinquent on their mortgage obligations. At no time during Appellants' loan modification application process were they behind on their loan payments or delinquent on any mortgage payment to Appellees. Lowry/Carol continually informed Chase of these inaccurate facts and asked that they be corrected, all to no avail. In using this false and misleading information in their telephonic and written attempts to incorrectly collect a debt from Appellant, and reporting false and inaccurate information to the credit bureaus, Chase has violated numerous provisions of U.S.C. 1692e. As aforementioned, Appellants have suffered severe and significant economic damage as a result. Lowry/Carol has pled enough facts to make this claim plausible and to survive dismissal. *Liu v. Amerco*, 677 F. 3d 489, 497 (1st Cir. 2012).

**10.  Promissory estoppel.**

   Appellees contend that "EMC representatives never promised a loan modification to Plaintiffs." "All such discussions were conditioned on Plaintiffs' qualifying, which they did not do." This is factually untrue (as detailed in Appellants' Complaint). Chase's employee contact assigned to Lowry/Carol, Mr. Samuel Young, in the "Home Lending Executive Office", repeatedly assured Lowry/Carol that he "didn't see any problem with it (the loan modification application)", "the application looked routine" to him and "it should go through easily", "it should be approved in a couple of weeks", and you should "hear something positive very soon" are all positive confirmations and promises that their loan modification application would be successful. Employee Ms. Tymika Gaston said, "It should be approved shortly." These statements were never made "conditioned on Plaintiffs' qualifying", as Appellees allege, but, rather, each time with the qualifier "You must not miss any payments", "as long as you continue to make your new monthly payments", and "be sure to continue making your monthly loan payment on time." These are all verbatim quotes written down by Lowry/Carol immediately during the conversation. Chase supposedly was taping these conversations; let them produce the verbatim conversations at trial, as Appellants have provided here. Appellants reasonably relied on these promises, as well as assuming that Chase would legally follow all the provisions of HAMP in determining their eligibility for a modification. Promissory estoppel makes a promise binding where "all the other elements

14

of a contract exist, but consideration is lacking." *Dumas v. Infinity Broadcasting Corp., 416 F. 3d 671, 677 (7th Cir. 2005), citing Bank of Marion v. Robert"Chick" Fritz, Inc., 57 Ill. 2d 120,311 N. E. 2d 138 (1974).* Lowry/Carol asserts that Chase made an unambiguous promise, orally and in writing, that if they continued to make their payments on time, provided accurate representations of their financial condition, and submitted all the requested documentation, they would receive an offer for a loan modification legally calculated using the required HAMP methodology.  Chase also promised, in its letter to Appellants of April 17, 2011, to reevaluate their modification application, recalculate their NPV results, and review their denial decision.  Lowry/Carol relied on these promises to their determent and economic injury by foregoing other remedies to save their home (such as selling their home, a bank short-sale, refinancing, bankruptcy, default, etc.).  These lost opportunities constitute sufficient detriment to support a promissory estoppel claim.  *Wood v. Mid-Valley Inc., 942 F. 2d 425, 428 (7th Cir. 1991).*  When read "as a whole and its parts in their context," Lowry/Carol's Complaint alleges a sufficiently clear promise, evidence of their own reliance, and an explanation of the injuries that resulted – enough to present a facially plausible claim and meet the requirements of promissory estoppel. *City of Dinuba v. County of Tulare, supra, 41 Cal. 4th at p. 865.*

## CONCLUSION

Based on the above information and the detailed allegations in Appellants' Complaint and Opening Brief, Lowry/Carol respectfully request that the District Court's judgment be overturned.

DATE: October 4, 2013


SIGNED:    /s/   Gary F. Lowry            /s/   Marian Carol
           2900 S. Blue Ranch Road
           Cottonwood, AZ  86326

# CERTIFICATE OF SERVICE

GARY F. LOWRY & MARIAN CAROL

    Plaintiffs/Appellants

        VS                            **Case No. 13-15598**

EMC MORTGAGE CORPORATION
A Delaware Corporation;

    and

JPMORGAN CHASE & COMPANY
A Delaware Corporation

    and

JPMORGAN CHASE BANK, N.A.
A Delaware Corporation

    Defendants/Appellees

We certify that a copy of the REPLY BRIEF and any attachments was sent by electronic filing to the persons listed below on October 4, 2013.

SIGNED:    /s/  Gary F. Lowry        /s/  Marian Carol

                                        Attorneys for Defendants/Appellees
U.S. Court of Appeals              Douglas C. Erickson & Jennifer A. Reiter
For the Ninth Circuit               Maynard Cronin Erickson
95 Seventh Street                    Curran & Reiter, P.L.C.
P. O. Box 193939                    3200 N. Central Avenue
San Francisco, CA  94119-3939     Phoenix, AZ  85012-2443